FILED

2014 Jan-08  AM 11:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **PAULA R. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **vs.** | ) | |
| | ) | Civil Action Number |
| **CITY OF BIRMINGHAM,** | ) | **2:12-cv-2171-AKK** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paula R. Smith, former City Clerk for the City of Birmingham, Alabama ("the City"), claims that the City interfered with her right to take protected leave and retaliated against her based on her exercise of rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), when Mayor William A. Bell and his Chief of Operations, Jarvis Patton, forced her to retire. Smith also seeks a declaratory judgment declaring that the City's policies violate the FMLA, and she claims that the City violated the Alabama Disability Discrimination Statute, Ala. Code § 21-7-8. Before the court is the City's motion for summary judgment, doc. 13, which is fully briefed, docs. 14, 18, 24, and ripe for decision. For the reasons stated below, except for the FMLA interference and Alabama disability claims, for which genuine factual disputes exist, the motion for summary judgment is

**GRANTED**.

Accordingly, this matter is set for a **pretrial conference at 3:15 p.m. on February 13, 2014, and for trial at 9:00 a.m. on March 24, 2014, both at the Hugo L. Black U.S. Courthouse in Birmingham, Alabama.**  The attention of counsel is directed to the attached PRE-TRIAL CONFERENCE instructions, which require that counsel submit a proposed Pre-trial Order at least four business days in advance of their conference.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II.  **FACTUAL BACKGROUND**[1]

The City initially hired Smith as a Stenographer in 1981. Doc. 14-1 at 4. After several promotions, sometime around 1995 or 1996, Mayor Richard Arrington, Jr., appointed Smith to the position of City Clerk. *Id.* at 4–5. As City Clerk, Smith reported to each mayor elected from 1997 until she retired in 2011, including Mayor Bell. *Id.* At issue in this case is Smith's contentions that the City violated her rights under the FMLA and the Alabama Disability Discrimination Statute.

Sometime in January, 2009, Smith was diagnosed with multiple sclerosis.

---

[1]These are the "facts" for summary judgment purposes only and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The court has gleaned these facts from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. Finally, all reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

Smith informed then Mayor Larry Langford and several civil servants of her condition. *Id.* at 22–23. She also informed Mayor Bell and Patton about her condition when they took office in early 2010.[2] *Id.* Smith's allegations in this lawsuit are directed at Mayor Bell and Patton.

Consistent with his right as a new mayor, Mayor Bell's office informed Smith in a letter dated May 13, 2010, that he would terminate her letter of appointment at the close of business on June 18, 2010. Doc. 19-1. The letter informed Smith also to submit a letter requesting her reappointment if she would like Mayor Bell to consider her for reappointment to her current position. *Id.* Smith complied and submitted a letter to Mayor Bell on May 19, 2010. Doc. 19-2.

After Mayor Bell took office, Smith missed work on multiple occasions prior to June 14, 2010. These absences, in part, triggered Mayor Bell to request Patton to evaluate Smith. Doc. 14-3 at 4. Although Mayor Bell found out subsequently that the absences resulted from illnesses, he told Patton that Smith "was unable to carry out the duties and responsibilities of being the city clerk and that [he] thought [they] should look at making some changes." *Id.* at 5–6. Nonetheless, Mayor Bell noted that if Smith "had a little more time in, that she could retire rather than taking any type of

---

[2]In their respective depositions, Mayor Bell and Patton denied that Smith ever informed them about her multiple sclerosis. Docs. 14-3 at 3; 14-2 at 3.

medical disability leave or medical disability status." *Id.* Consequently, Mayor Bell suggested that Patton allow Smith to continue working until she reached the point when she could retire, and instructed Patton to discuss that option with her. *Id.*

On June 14, 2010, Smith initiated a meeting with Patton to discuss an approved absence about which Patton previously inquired. Doc. 14-1 at 9. During the meeting, Patton told Smith that August 31, 2010, would be Smith's last day to report to work. *Id.* at 9–10. When Smith informed Patton that she had surgery scheduled shortly before July 4, 2010, *id.* at 24, Patton told Smith that she "need[ed] to change it because [she] can't take a day off," *id.* at 10. Patton also told Smith that the determination that she needed to retire was unrelated to her multiple sclerosis. *Id.* Sometime thereafter, Patton gave Smith a handwritten note stating, "September surgery, extended sick leave, retire date is March 21, 2011. Will be retiring at that time." Docs. 14-2 at 7–8; 19-3. Also, consistent with Patton's instructions, Smith changed her surgery to September 1, 2010, the day immediately after her last day to report to work. Doc. 14-1 at 10.

On June 18, 2010, Mayor Bell sent Smith a letter informing her of her re-appointment as City Clerk. Doc. 19-6. According to Mayor Bell, he issued the letter for administrative purposes to allow Smith to retire in March, 2011. Doc. 14-3 at 7. After she received the letter, Smith sent a letter to Mayor Bell requesting extended

sick leave beginning September 1, 2010, because she was "scheduled to have surgery in September (2010) and will be off for an undetermined amount of time." Doc. 19-4.[3]

Between June 14 and August 31, 2010, Smith developed problems with her multiple sclerosis. *Id.* at 12–13. However, she delayed visiting a doctor until after August 31, 2010, due to her fear that Patton would terminate her if she violated his directive not to take time off before that date. *Id.* at 13. On September 1, 2010, Smith had foot surgery. *Id.* at 21. She retired in March, 2011. Doc. 14-1 at 55.

### III.  ANALYSIS

Smith raises claims under state law and the FMLA. Specifically, Smith maintains that the City violated the Alabama Disability Discrimination Statute and, as it relates to the FMLA, that the City interfered with her rights, retaliated against her, and that its attendance policy violates the FMLA. The court will analyze the FMLA claims first and then the state law claim.

### A.    FMLA Claims

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The Eleventh Circuit has recognized that

---

[3]There is no direct evidence that Mayor Bell granted Smith's request; however, Smith did take extended sick leave beginning September 1, 2010. Doc. 14-4 at 7.

§ 2615(a) creates two types of claims: "interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the [FMLA]." *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (internal citations omitted). The court discusses these claims separately below.

### 1.    FMLA Interference

"To establish an interference claim, 'an employee need only demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied.'" *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001)). To assert a claim under the FMLA, Smith must prove that she qualified for leave under one of the enumerated grounds in 29 U.S.C. § 2612(a)(1) and that she gave sufficient notice under 29 C.F.R. §§ 825.302 or 825.303.[4]

---

[4]The FMLA provides that the Secretary of Labor "shall prescribe such regulations as are necessary to carry out" the provisions of the law. 29 U.S.C. § 2654. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Because § 2654 does not authorize the Secretary of Labor to prescribe retroactive rules, the court applies the version of the Code of Federal Regulations in effect during the events in question. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to

### a.     Smith's foot pain was a serious health conditions

Smith contends that the City interfered with her right to FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The City contends that Smith's health conditions did not rise to the level of a serious health condition. Doc. 14 at 6. Under the FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Smith concedes that neither of her health conditions necessitated inpatient care. Doc. 18 at 14. Therefore, the only issue here is the continuing treatment prong. While the FMLA does not define the term "continuing treatment," the governing regulations clarify that a patient must be "incapacitated" for a specific period of time depending on the nature of the condition.[5] 29 C.F.R. § 825.115. Incapacity is defined as the "inability to work, attend

---

promulgate retroactive rules unless that power is conveyed by Congress in express terms").

    [5]For most conditions, an employee must be incapacitated for a period of more than three consecutive days due to the condition and there must be subsequent treatment or a subsequent period of incapacity related to the same condition. 29 C.F.R. § 825.115(a). For a chronic condition—one that requires periodic treatment, continues over an extended period of time, and may result in periodic incapacity—any period of incapacity due to the condition is sufficient. *Id.* § 825.115(c). For a permanent or long-term condition—one for which treatment may not be effective and the employee is under the continuing supervision of a health care provider—any period of incapacity due to the condition is sufficient. *Id.* § 825.115(d).

school or perform other regular daily activities due to the serious health condition,

treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

The City argues that Smith's foot pain does not rise to a serious health

condition because Smith was not "incapacitated," and that Smith cannot show that the

foot surgery prevented her from working because Smith understood and agreed that

she would be on sick and vacation leave until her retirement. Doc. 14 at 9–10.

Although it is unlikely that Smith needed six months—the time between her last day

and her retirement—to recover from her surgery, she initially scheduled the surgery

for "a day or two before the 4th of July because [she] was trying to work the holiday

in with the surgery so [she] wouldn't have to take so many days off." Doc. 14-1 at 10.

Accordingly, there is sufficient evidence for a jury to determine that the surgery

incapacitated Smith for at least three days.[6] Thus, Smith's foot pain rises to the level

of a serious medical condition.

### b.     Smith provided proper notice as required by the FMLA

Next, the City challenges the sufficiency of Smith's notice for FMLA leave.

Doc. 14 at 6. The City's arguments are unavailing for several reasons. First, as it

---

[6]The City also notes that Smith "does not present any evidence that she was treated by her physician at any time after her surgery." Doc. 14 at 10. However, there is sufficient evidence for a jury to determine that Smith received subsequent treatment for her foot pain, doc. 14-1 at 11, or that her foot pain required periodic treatment, continued over an extended period of time, and resulted in periodic incapacity, *id.* at 10–11.

relates to the timing of Smith's notice, the City is correct that Smith's notice to Patton on June 14, 2010, occurred less than 30 days before the scheduled surgery date. *See* 29 C.F.R. § 825.302(a) ("An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for leave is foreseeable . . . ."). Nonetheless, the City violated the FMLA because "[w]hen the need for FMLA leave is foreseeable at least 30 days in advance and an employee fails to give timely advance notice with no reasonable excuse, the employer may delay FMLA coverage until 30 days after the date the employee provides notice." *Id.* § 825.304(b). Here, the City delayed FMLA coverage until September 1, 2010—79 days after Smith's notice—when Patton told Smith to put off her surgery until after Smith's last work day.

Second, the City's contention that Smith's notice was inadequate also misses the mark. Although an employee is not required to assert her right to take leave under the FMLA expressly, she must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave." 29 C.F.R. §§ 825.302(c), 825.303(b). Here, Smith gave "sufficient notice to [the City] that potentially FMLA-qualifying leave [was] needed," when she informed Patton that she needed surgery on her foot. *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) (citing *Strickland*, 239 F.3d at 1209). As a result, the burden shifted

to the City to "ascertain whether [Smith's] absence actually qualifies for FMLA protection." *Id.* Accordingly, Smith provided adequate notice of her need for foot surgery.[7]

### c.   A factual dispute exists regarding whether the city gave Smith all the leave she requested

Finally, the City contends that Smith did not properly request leave for her surgery until her June 22, 2010 letter to Mayor Bell, and Smith received all the leave she requested in the letter. Doc. 14 at 6. The City's argument overlooks that Smith sent the letter only after Patton denied her request on June 14, 2010, and made it clear that Smith could not schedule her surgery before September 1, 2010. While Smith's June 14, 2010 notice was untimely, the City could only delay Smith's FMLA leave for 30 days. *See* 29 C.F.R. § 825.304(b). By delaying Smith's leave for 79 days, a factual dispute exists regarding whether the City gave Smith all the leave she requested.

---

[7]Smith also argues that she was denied the right to reinstatement and was forced to retire after she completed her leave. Doc. 18 at 20. "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214; 29 U.S.C. § 2614(a)(1). However, an employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3). Here, the City made the decision that Smith retire prior to her purported request for FMLA leave. *See* doc. 14-1 at 9–10. Thus, the City would have required Smith to retire regardless of whether Smith took FMLA leave. Accordingly, she was not entitled to reinstatement.

In light of the evidence regarding Patton's directive that Smith delay her surgery, a factual dispute exists regarding whether the City interfered with Smith's FMLA rights. Accordingly, the motion for summary judgment on the interference claim is due to be denied.

### 2.    FMLA Retaliation

To succeed on an FMLA retaliation claim, Smith must show that the City intentionally "discriminated against [her] because [s]he engaged in activity protected by the Act." *Strickland*, 239 F.3d at 1206. Essentially, Smith must show that she suffered an adverse employment action that was "motivated by an impermissible retaliatory or discriminatory animus." *Id.* at 1207. Smith can make this showing through direct or circumstantial evidence. *See Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008).

### a.    There is no direct evidence of retaliation

Smith asserts that she "has provided direct evidence of FMLA retaliation" through Mayor Bell's comments that Smith should retire. Doc. 18 at 21. The Eleventh Circuit has held that:

> This Court defines direct evidence of discrimination as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. Direct evidence is evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption. As our precedent illustrates, only the

> most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and quotations omitted) (alterations in original). While there is evidence that Mayor Bell decided that Smith should retire "due to her absences," doc. 14-3 at 6, and that he knew Smith was absent "for illnesses," *id.* at 5, there is nothing in the record showing that Mayor Bell knew Smith engaged in FMLA-protected activity prior to her June 14, 2010 meeting with Patton, *see* doc. 14-1 at 12. In fact, Smith admits that she "never had to go to personnel or complete an FMLA [leave request] because [she] was using [her sick and vacation] time." *Id.* at 23. Thus, Mayor Bell's comments are not direct evidence of FMLA retaliation because, at best, they suggest, rather than prove, a retaliatory motive. *See Wilson*, 376 F.3d at 1086. To find a retaliatory motive here, one must infer intent and ignore that Mayor Bell may have based his decision on unprotected absences. *Id.* As such, Mayor Bell's statement does not qualify as direct evidence. For the same reason, Patton's purported comment that Smith's multiple sclerosis played no role in the determination that Smith retire, doc. 14-1 at 10, is also insufficient to establish direct evidence because the alleged statement only suggests a retaliatory motive. Accordingly, there is no direct evidence of retaliatory

intent.

### b.    Circumstantial Evidence

When there is no "direct evidence of the employer's retaliatory intent, [the Eleventh Circuit] employs the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). The *McDonnell Douglas* framework first "requires the plaintiff to create an inference of [retaliation] through her *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

A plaintiff establishes a prima facie case of FMLA retaliation by showing "that (1) [s]he engaged in statutorily protected activity, (2) [s]he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin*, 543 F.3d at 1268. The record is unrefuted that Mayor Bell made the

decision that Smith retire prior to Smith's June 14, 2010 meeting with Patton and June 22, 2010 letter to Mayor Bell, in which Smith disclosed her surgery. *See* docs. 14-1 at 9–10; 14-2 at 5–6. Accordingly, there is no evidence that Mayor Bell and Patton knew about Smith's purported protected activity regarding her foot surgery when they made the decision to make her retire. Consequently, there is no causal connection between the surgery and the decision that Smith retire. *See Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quoting *Farely v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)) (alterations in original) ("To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct.").

Moreover, Smith never requested leave or informed anyone that her multiple sclerosis flared up following the June 14, 2010 meeting. Doc. 14-1 at 13. Although Smith argues that "she took medical leave for multiple sclerosis . . . ," doc. 18 at 25, her only evidence to support this contention is Mayor Bell's comments that Smith was forced to retire "due to her absences," doc. 14-3 at 6, and that he knew that Smith was absent from her office "for illnesses," *id.* at 5. This does not demonstrate that Smith's absences were due to her multiple sclerosis, or that they were FMLA-protected. Accordingly, Smith cannot show a prima facie case of retaliation. Therefore, summary judgment is due to be granted on Smith's retaliation claim.

### 3.    Declaratory Judgment

In Count Four of the Complaint, Smith seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, asking this court to declare that the City's leave of absence policy employees are required to sign prior to approval of a leave of absence violates the FMLA because it does not guarantee reinstatement to an employee who takes FMLA leave. Doc. 1 at 16–17.[8] However, Smith admits that she never had to sign the policy. Doc. 18 ¶ 28. Moreover, there is no risk of future injury because Smith no

---

[8]Smith alleges that if she applied for FMLA leave, she would have been required under the City's policy to agree to a "Letter of Understanding" containing the following conditions for approval of a leave of absence request:

> The purpose of this letter is to explain and verify my understanding of the stated conditions for approval of my request for a leave of absence without pay. If there is no vacant position available at the end of the approved leave period, or if I am offered a position and refuse it, I will be separated in good standing fro the classified service and my name will be placed on the **Reemployment List** in accordance with Personnel Board Rule 7.31 (b).

> The **Reemployment List** is a separated list established to allow certification of individuals who have been separated following a leave of absence. I understand that my name will not remain on the **Reemployment List** for longer than twelve (12) consecutive months.

> I also understand that, along with names from the **Reemployment List**, names will be certified from the "Regular" List at the same time. The employer can select anyone whose name is on the certification to fill the vacancy. This means that even though the employer <u>can</u> hire me from the list, he does not have to do so.

> I understand that there is no guarantee that I will be selected for reemployment within the 12 months that my name is on the list. In addition, I understand that if I am reemployed from this list, I will be required to complete a probationary year, just like a new employee, unless I am rehired after returning from Disability Leave status.

Doc. 19-5.

longer works for the City. Doc. 14-1 at 55. In other words, only current City employees could suffer an injury from the City's policy. "It is well settled that a 'plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties.'" *AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1361–62 (11th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Accordingly, Smith's claims for declaratory relief are due to be dismissed for lack of standing.[9]

## B.   Alabama Disability Discrimination Statute

In addition to Smith's FMLA claims, she also claims that the City violated her rights under Alabama Code § 21-7-8. Doc. 1 at 15–16. The only arguments the City makes for dismissing this claim is that the court should not exercise its supplemental jurisdiction because Smith's federal claims are due to be dismissed, or, alternatively, Smith cannot show that the City discharged or constructively discharged her.[10] These

---

[9]Even though the standing issue was not raised by the City, the court cannot ignore it. *See Bischoff v. Osceola County, Florida*, 222 F.3d 874, 877–78 (11th Cir. 2000) ("As an initial matter, we emphasize that the district court correctly reached out and considered the question of standing *sua sponte*.").

[10]In its reply brief, the City argues that Ala. Code § 21-7-8 does not create a private cause of action. The court will not address this argument because the City did not address it in its initial brief. *See Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. Dec. 14, 2009) (citing numerous cases from 2009 alone declining to consider arguments raised for the first time in a reply); *see also Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

arguments are unavailing because the City's motion for summary judgment on Smith's FMLA interference claims is due to be denied. *See supra* Part III.A. Moreover, there is sufficient evidence at this juncture to find that the City constructively discharged Smith. An involuntary resignation constitutes a constructive discharge, and occurs where the employer forced the resignation by coercion or duress. *See Ross v. City of Perry, Ga.*, 396 Fed. Appx. 668, 670 (11th Cir. Sept. 22, 2010) (Title VII constructive discharge) (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (public employee due process constructive discharge)). Under this theory, the court "consider[s] whether, under the totality of the circumstances, the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign." *Hargray*, 57 F.3d at 1568 (11th Cir. 1995). Factors that may be helpful in making this determination include whether: (1) the City gave Smith an alternative to retirement; (2) Smith understood the nature of her choice; (3) the City gave Smith a reasonable time to make her decision; (4) the City permitted Smith to select the effective date of retirement; and (5) whether Smith had the advice of counsel. *Id.* Although these factors are helpful, a resignation will be considered voluntary even where the only alternative to resignation is possible termination for cause, criminal charges, or other unpleasant alternatives. *Id.*

Here, Patton informed Smith that her last day would be August 31, 2010, doc. 14-1 at 9–10, and that she would retire after her sick and vacation leave ran out, doc. 19-3.   Under these facts, a jury may find that termination was the only possible alternative if Smith had refused Patton's request. Doc. 14-2 at 6. Moreover, if the City had terminated Smith, there is ample evidence for a jury to find that the City did so based on Smith's medically related absences. *See supra* Part III.B.1. Under Alabama Code § 21-7-8, such a termination could constitute unlawful discrimination against the physically disabled. Accordingly, under the totality of the circumstances, a jury could find that Smith retired involuntarily due to coercion or duress, and that the City may have violated Alabama Code § 21-7-8.

## IV.  <u>CONCLUSION</u>

For the aforementioned reasons, the City's motion for summary judgment, doc. 13, on Smith's claims for FMLA retaliation and declaratory relief based on the City's leave of absence policy is **GRANTED**. The motion is **DENIED** in all other respects. Accordingly, Smith's claims for retaliation are **DISMISSED** with prejudice, and her claims for declaratory relief are **DISMISSED** without prejudice for lack of standing.

**DONE** the 8th day of January, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**BIRMINGHAM, ALABAMA**

This case is  set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure.  A conference-type hearing will be held in chambers in the Hugo L. Black U.S. Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions.  Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating  workable procedures and deadlines for remaining discovery matters.  At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov)a proposed Pre-trial Order in WordPerfect format, furnishing other counsel with a copy.  It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (www.alnd.uscourts.gov/Kallon/Kallonpage) to illustrate the format preferred by the court and also to provide additional guidance and instructions.  Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike.  The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute.  This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing.  Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.